Dr. James E. MESEREY, Plaintiff,

v.

UNITED STATES of America, and Department of Health, Education and Welfare, and F. David Matthews, Secretary of Department of Health, Education and Welfare, and Public Health Service of the Department of H. E. W., and Food and Drug Administration, and Stephen S. Gross, Director of San Francisco District of Food and Drug Administration, and Rod Chu, Compliance Officer, San Francisco District of Food and Drug Administration, and Dick Kluge, Assistant for Import Operations, Food and Drug Administration, and Alexander Schmidt, M. D., Commissioner of Food and Drug Administration, and United States Customs Service, and Vernon Acree, Commissioner of the United States Customs Service, and Albert G. Bergesen, Regional Commissioner of District 7 of United States Customs, and George K. Brokaw, Agent for said Albert G. Bergesen, and United States Treasury Department, and William E. Simon, Secretary of United States Treasury Department, Defendants.

No. Civil LV 76–218 RDF.

United States District Court,
D. Nevada.

Nov. 16, 1977.

550

Edward R. Weinstein, Las Vegas, Nev., for plaintiff.

Lawrence J. Semenza, U. S. Atty. by Leland E. Lutfy, Asst. U. S. Atty., Las Vegas, Nev., for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ROGER D. FOLEY, Chief Judge.

This matter has been submitted to the Court on defendants' motion for summary judgment, filed April 28, 1977, and on plaintiff's motion for summary judgment, filed June 3, 1977.

### FACTS

This is a civil action for declaratory and injunctive relief, replevin and monetary damages brought by Dr. Meserey, plaintiff, against the United States, three federal agencies and various federal employees. This action is allegedly based upon the defendants' role surrounding the detention of certain homeopathic drugs sought to be imported into the United States under the authority of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq.

The homeopathic drugs in question were manufactured in this country and Great Britain. Evidently some of the drugs had been purchased in the United States, shipped to Canada, and now plaintiff seeks to effect admission without further interference with customs officials or the Food and Drug Administration. Approximately 2000 bottles of these drugs are being detained.

On March 14, 1976, these homeopathic drugs were imported with other personal effects of plaintiff to Las Vegas, Nevada. Customs officials in Las Vegas examined the shipment to determine if there were any violations of the Food and Drug Act, 21 U.S.C. § 381(a). From this examination it was determined that this shipment may be in violation of the Act. On March 30, 1976, samples of the drugs were sent to the District Office of the Food and Drug Administration in San Francisco where further examinations were performed by personnel in that office, Mr. Chu and Mr. Gross, defendants in this action.

This examination revealed that the drugs appeared to be misbranded within the meaning of 21 U.S.C. § 352(f) which requires directions for use and warnings on the label. Mr. Chu, according to his affidavit, made the following findings:

"1.  Some of the samples did not correctly bear the names of the drugs listed or recognized in Homeopathic Pharmacopedia of the United States (Exhibit 2(a));

"2.  The labels of some samples restricted dispensing by a licensed practitioner; plaintiff was not such a practitioner (Exhibit 2(b));

"3.  Some samples failed to bear adequate directions for use (Exhibit 2(c));

"4.  No sample bore warnings against inappropriate use (Exhibit 2(d)); and

"5.  One label bore no directions for use whatsoever, and its label consisted merely of a typed white-gummed label with only the name of one unidentifiable drug (Exhibit 2(e))."

Based on the above findings, a notice of detention and hearing was issued on April 20, 1976, pursuant to 21 U.S.C. § 381(a). Accompanying this notice was a letter that requested plaintiff to supply the following information, which, if sufficient, would effect a release of the drugs: a) the composition of the preparations, b) the intended use of these preparations, and c) plaintiff's

qualifications to receive and prescribe these preparations.

Plaintiff's response letter failed to provide sufficient information to effect a release of the drugs. Plaintiff also contacted Mr. Chu over the telephone to attempt to secure a release of the drugs. According to Mr. Chu's affidavit, on May 18, 1976, plaintiff personally visited Mr. Chu's office to seek admittance of his drugs. At that time plaintiff was informed that he could effectuate release four ways: a) relabeling, b) returning the drugs to Canada at his own expense, c) sifting through the articles, under the supervision of an FDA employee, segregating those drugs which are not misbranded from those which are; and/or d) destroying the drugs.

All of these methods were rejected by the plaintiff. On July 27, 1976, plaintiff was sent a notice of refusal of admission, and on October 21, 1976, plaintiff instituted this action. Plaintiff filed an administrative claim for his damages on December 23, 1976.

*JURISDICTION*

■ As plaintiff seeks a determination by this Court as to the validity and enforcement of 21 U.S.C. § 321(g) and § 381, he properly asserts jurisdiction of this Court under 28 U.S.C. § 1337 which provides review for cases "arising" under acts relating to commerce. *Rutherford v. United States,* 399 F.Supp. 1208 (D.Okl.1975).

*DISCUSSION*

I. *CONSTITUTIONALITY OF TITLE 21 § 321(g) AND § 381 OF THE FEDERAL FOOD, DRUG, AND COSMETIC ACT*

A. *§ 321(g)*

Plaintiff contends that the definition of the word "drug" in 21 U.S.C. § 321(g)(1)(A) that states (in part) articles listed in the Homeopathic Pharmacopoeia shall be considered "drugs" is overbroad in that homeopathic remedies, according to his complaint, "no matter how old, are not dangerous to anyone, including children, no matter what condition a person is in, and no dosage, no matter how high, is unsafe to anyone."

The Supreme Court has stated:

". . . it is clear from § 201 [as amended § 321(g)] that the word 'drug' is a term of art for the purposes of the Act, encompassing far more than the strict medical definition of that word." *United States v. An Article of Drug * * * Bacto-Unidisk,* 394 U.S. 784, 793, 89 S.Ct. 1410, 1415, 22 L.Ed.2d 726 (1969).

At page 798, 89 S.Ct. at page 1418 the Court further stated:

". . . we think, that Congress fully intended that the Act's coverage be as broad as its literal language indicates— and equally clearly, broader than any strict medical definition might otherwise allow."

The Court continued:

". . . we are all the more convinced that we must give effect to congressional intent in view of the well-accepted principle that remedial legislation such as the Food, Drug, and Cosmetic Act is to be given a liberal construction consistent with the Act's overriding purpose to protect the public health . . ."

■ Thus, the Supreme Court has ruled that the Act's coverage "be as broad as its literal language indicates" and, therefore, there is no merit in plaintiff's allegation that the statute is overbroad.

■ Assuming arguendo that § 321(g)(1)(A) could be declared overbroad, § 321(g)(1)(B) also defines a drug as "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; . . ." Plaintiff states in paragraph 14 of his complaint that he would inform users of the proper dosage and potential dangers of the homeopathic remedies. In his opposition to defendants' motion for summary judgment (page 9, lines 11–12), plaintiff states "[t]hese remedies, and homeopathic physicians, treat the patient, not just the disease." By plaintiff's own admission, homeopathic remedies are used in the treatment of diseases in man, and therefore his remedies fall squarely within § 321(g)(1)(B).

Plaintiff argues his remedies are completely harmless to anyone in any condition in any dosage. This argument, even if true, will not preclude a finding that his remedies are "drugs" within the meaning of the Act. Regardless of the actual physical effect of the product, once it is established that its intended use brings it within the drug definition, it will be deemed a drug for purposes of the Act. *United States v. An Article . . . Sudden Change,* 409 F.2d 734, 739 (2nd Cir. 1969).

In *Flemming v. Florida Citrus Exchange,* 358 U.S. 153, 166, 79 S.Ct. 160, 168, 3 L.Ed.2d 188 (1958) the Court stated:

"The Federal Food, Drug, and Cosmetic Act is a detailed and thorough piece of legislation. Its treatment of many public health and food problems is quite specific, and of course it is the duty of the courts in construing it to be mindful of its approach in terms of draftsmanship. Here again, in our construction of this explicit Act, we must be sensitive to what Congress has written, and recall that 'It is for us to ascertain—neither to add nor subtract, neither to delete nor to distort.'"

From the preceding discussion, it is clear that whenever there is a problem of construction, the duty of the courts is to liberally construe provisions of the Act, being mindful of its overriding purpose to protect the public health. In the instant case, this Court is not confronted with a problem of construction or interpretation. Plaintiff seeks to strike down the Act's definition of the term "drug" because he alleges his remedies are safe and therefore the statute is overbroad. Under the Act, the safety of an article is not the determining factor. Instead, the determination under the Act is based upon the articles listing in the Pharmacopoeia or its intended use.

Obviously, plaintiff's remedies fall squarely within two subsections of the Act which define the word "drug." It would be error for this Court to strike down the precise language of the Act as written. It follows that plaintiff's constitutional attack on the definition of the word "drug" is without merit.

*B. § 381*

Plaintiff alleges that § 381 of the Act is overbroad, void and unconstitutional. In view of the foregoing discussion on the constitutionality of § 321(g) of the Act, this allegation is without merit.

## II. DUE PROCESS AND EQUAL PROTECTION

Plaintiff also alleges that the enforcement of § 381 resulting in the detention and refusal of admission of his remedies has deprived him of property without due process of law in violation of the Fifth Amendment and denied him equal protection of law under the Fourteenth Amendment.

*A. THE "TAKING"*

Plaintiff has incorrectly classified the detention of his remedies as a "taking" prohibited by the Fifth Amendment. The congressional power to regulate commerce with foreign nations is exclusive and plenary. *Board of Trustees of Univ. of Ill. v. United States,* 289 U.S. 48, 56, 53 S.Ct. 509, 77 L.Ed. 1025 (1933). Congress has the power ". . . to determine what articles of merchandise may be imported into this country and the terms upon which a right to import may be exercised." *Sugarman v. Forbragd,* 267 F.Supp. 817, 825 (N.D.Cal.1967) citing *Buttfield v. Stranahan,* 192 U.S. 470, 493, 24 S.Ct. 349, 48 L.Ed. 525 (1903).

In *Buttfield, supra,* page 497, 24 S.Ct. page 356, as quoted in *Sugarman, supra,* it was urged that due to a lack of a hearing, there had been a denial of due process; to that argument the Court stated:

"The provisions in respect to the fixing of standards and the examination of samples by government experts was for the purpose of determining whether the conditions existed which conferred the right to import, and they therefore in no just sense concerned a taking of property."

Therefore, the detention of goods to determine compliance with congressional laws is in no sense a "taking" of property in

the due process sense. Plaintiff has not been denied his property. He is denied the right to introduce his goods into commerce unless they are in compliance with the Act. Failing to comply with the Act, plaintiff may export the articles to a country of origin or have them destroyed. 28 U.S.C. § 381(a).

## B. THE "HEARING"

Plaintiff argues that he was not afforded a "hearing" and that his request for such a hearing has been denied. [complaint, paragraph 7]. In *Sugarman v. Forbragd,* 405 F.2d 1189, 1190 note 3 (9th Cir. 1969), cert. denied 395 U.S. 960, 89 S.Ct. 2103, 23 L.Ed.2d 747, the Ninth Circuit stated:

"The District Court held, and we agree, that to exclude imports, no formal hearing is required either by the Food, Drug, and Cosmetic Act 21 U.S.C. § 381(a), by the Administrative Procedure Act, 5 U.S.C. §§ 551–558, or by the Constitution, congressional power over foreign commerce being absolute."

Elaborating on the requirements for a hearing contemplated under 21 U.S.C. § 381(a), 21 C.F.R. 1.94(a) provides:

"(a) If it appears that the article may be subject to refusal of admission, the district director shall give the owner or consignee a written notice to that effect, stating the reasons therefor. The notice shall specify a place and a period of time during which the owner or consignee shall have an opportunity to introduce testimony. Upon timely request, giving reasonable grounds therefor, such time and place may be changed. Such testimony shall be confined to matters relevant to the admissibility of the article, and may be introduced orally or in writing."

Since no formal trial type hearing is required, this Court will analyze the facts to determine if there exists a genuine issue of a material fact concerning plaintiff's opportunity to present testimony relevant to the admissibility of his detained remedies.

As previously stated in the facts, defendants Chu and Gross, compliance officers of the FDA after examining samples of the detained shipment concluded the articles appeared to be misbranded within the meaning of the Act. Under 21 U.S.C. § 352(f) an article is misbranded:

"Unless its labeling bears (1) adequate directions for use; and (2) such adequate warnings against use in those pathological conditions or by children where its use may be dangerous to health, or against unsafe dosage or methods or duration of administration or application, in such manner and form, as are necessary for the protection of users: Provided, That where any requirement of clause (1) of this subsection, as applied to any drug or device, is not necessary for the protection of public health, the Secretary shall promulgate regulations exempting such drug or device from such requirement."

The exhibits attached to defendant's motion show the articles are improperly labeled in that they lack directions and warnings for use. [See Exhibits 2 (a through e) attached to the affidavit of Rod Chu.] Plaintiff does not contend that his remedies contain the directions and warnings required under 21 U.S.C. § 352(f).

Upon finding the articles apparently misbranded under the Act, Plaintiff was sent a notice of detention and hearing specifying the reasons for the detention. [Exhibit 3 attached to the affidavit of Rod Chu.] With that notice of detention, plaintiff was also sent a letter requesting information necessary to effect a release of the drugs. [Exhibit 4 attached to the affidavit of Rod Chu.] Plaintiff communicated several times by telephone and correspondence but was unable to effect a release of the drugs. Plaintiff personally visited the Regional Office of the FDA and met with Mr. Chu to effect a release of the drugs, but was still unsuccessful. During that visit plaintiff was informed he could effect a release of the drugs by relabeling, returning the drugs to Canada at his own expense, sifting through the drugs under the supervision of an FDA employee, segregating those remedies which are not misbranded, or destroying the drugs. None of these alternatives were accepted by the plaintiff.

On the basis of the facts as stated above, established primarily by the affidavit of Mr. Chu, and the lack of any contradiction in plaintiff's affidavit, defendants have established that plaintiff was not deprived of his property without due process of law. The facts clearly established that plaintiff did participate through his telephone calls, correspondence and a personal visit in the decision-making process relating to the products' admissibility. *L & M Industries v. Kenter,* 458 F.2d 968, 970–971 (2d Cir. 1972).

## C. EQUAL PROTECTION

This Court finds no merit in plaintiff's argument that defendants have deprived him of equal protection of the law. The Fourteenth Amendment to the Constitution provides that no *state* shall " . . . deny to any person within its jurisdiction the equal protection of the laws." The equal protection clause is not applicable to the federal government. *La Belle Iron Works v. United States,* 256 U.S. 377, 41 S.Ct. 528, 65 L.Ed. 998 (1921); *Hirabayashi v. United States,* 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943).

Plaintiff erroneously asserts that *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1953), applies the equal protection clause to the federal government in this situation. In that case the Court could not use the equal protection clause to prohibit racially segregated schools in the District of Columbia as it is not a state. For this reason, the Court stated that the equal protection clause and the due process clause are not mutually exclusive. At page 500, 74 S.Ct. at page 695, the Court held: " . . . that racial segregation in the public schools of the District of Columbia is a denial of due process of law guaranteed by the Fifth Amendment to the Constitution." Therefore, plaintiff has failed, under the Fourteenth Amendment, to state a claim upon which relief can be granted.

## III. JURISDICTION TO REVIEW AN ORDER OF THE FDA

Plaintiff asks this Court to review the order excluding his homeopathic remedies from admission and to enjoin defendants from enforcement of 21 U.S.C. § 381. Jurisdiction is alleged under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, which provides for judicial review of agency decisions. However, by its terms, this Act is inapplicable where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). This is the situation we have here in that 21 U.S.C. § 381(a) enables the Secretary to detain articles if they "appear" to be misbranded. Therefore, the determination to exclude an article from importation is committed to the discretion of the Secretary of the Health, Education and Welfare. The rule in the Ninth Circuit is that in the absence of arbitrary or capricious action, an order excluding material from import under 21 U.S.C. § 381(a) is not subject to judicial review. *Sugarman v. Forbragd, supra; Church of Scientology of California v. Richardson,* 437 F.2d 214, 217 (9th Cir. 1971).

Absent a showing of arbitrary or capricious action, this Court lacks jurisdiction to review or restrain the decision of the FDA concerning the refusal of admission of plaintiff's remedies. From the facts presented it is clear that plaintiff had a hearing and that the decision to exclude his homeopathic remedies from admission was *not* arbitrary or capricious. (See "hearing" discussion section II B., supra). Therefore, this Court lacks jurisdiction to review the decision of the FDA refusing admission of the homeopathic remedies.

## IV. JURISDICTION UNDER THE FEDERAL TORT CLAIMS LIABILITY ACT

Plaintiff seeks an award of compensatory, punitive and exemplary damages allegedly arising from the detention of his drugs and for defendants' alleged intentional infliction of emotional distress upon him. It is settled that absent express statutory consent, the sovereign is immune from suit. *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *Larson v. Domestic & Foreign Commerce*

*Corp.,* 337 U.S. 682, 688, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).

The Federal Tort Claims Liability Act [FTCA], 28 U.S.C. §§ 2671–2680, can operate as a waiver of sovereign immunity provided the plaintiff: 1) follows the statutory procedures necessary to obtain relief under the FTCA, and 2) is not exempted from the operation of the Act.

28 U.S.C. § 2675(a) provides that no action shall be instituted ". . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied . . . in writing . . . . The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. . ."

The command of the statutory language is clear:

". . . the claimant may not commence his court action until either (1) the agency makes a final denial within the six months' period, or (2) six months transpires after the claim is filed with the agency, and the claimant then treats the agency failure to act as a final denial of the claim. 28 U.S.C. § 2675(a)." *Caton v. United States,* 495 F.2d 635, 638 (9th Cir. 1974).

In this case the homeopathic drugs were detained on March 30, 1976. On July 27, 1976, a notice of refusal of admission was sent to the plaintiff. On October 21, 1976, plaintiff instituted this action and on December 23, 1976, plaintiff submitted an administrative claim to the FDA. Plaintiff has clearly failed to file his administrative claim before bringing this action in this Court as required in 28 U.S.C. § 2675(a) and therefore this Court lacks jurisdiction on this claim.

Plaintiff argues that the six-month period required to constitute a denial expired on June 27, 1977, and therefore this issue is moot. This contention, even if true, will not save plaintiff's claim under the FTCA

from dismissal for lack of jurisdiction. Assuming arguendo that plaintiff has properly exhausted his administrative remedies pursuant to § 2675, if the tort claim falls within one of the exceptions provided in 28 U.S.C. § 2680, this Court lacks subject matter jurisdiction over the tort claim. *Morris v. United States,* 521 F.2d 872, 874 (9th Cir. 1975).

One exception, 28 U.S.C. § 2680(c), provides that no action shall lie for "[a]ny claim arising in respect of . . . the detention of any goods or merchandise by any officer of customs . . . or any other law-enforcement officer." Clearly, the gravamen of plaintiff's complaint for damages arises from the detention of his remedies by Customs and FDA officials under § 381(a). Therefore, this Court lacks subject matter jurisdiction over this claim. *United States v. 1500 Cases, More or Less, etc.,* 249 F.2d 382 (7th Cir. 1957); *S. Schonfeld Company, Inc. v. SS Akra Tenaron,* 363 F.Supp. 1220 (D.C.S.C.1973); *United States v. Articles of Food . . . Clover Club Potato Chips . . .,* 67 F.R.D. 419 (D.C. Idaho 1975).

Another exception may be found in the FTCA in 28 U.S.C. § 2680(a). The first phrase of this section provides:

"(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid . . ."

is exempted from the FTCA. Plaintiff has not plead or shown by way of affidavit that any of the defendants failed to exercise due care. Mr. Chu and Mr. Gross, compliance officers of the FDA, found that the samples of plaintiff's homeopathic remedies were apparently misbranded under the Act. Upon that finding, these officers contacted Mr. Richard Klug, Assistant for Import Operations, Executive Director of Regional Operations, who concurred in their findings and a notice of detention and hearing was sent to plaintiff. The record is void of any allegations supported by affidavit or other evidence that would suggest a lack of due

care on the part of defendants. Without showing defendants failed to exercise due care, plaintiff's claim falls squarely within the exception to the FTCA in the first phrase of § 2680(a).

Plaintiff and defendants argue at length about the meaning and application of the second phrase of § 2680(a) which prohibits actions under the FTCA ". . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." The "discretionary function" analysis adopted by this Circuit in *United States v. DeCamp,* 478 F.2d 1188, 1190 (9th Cir. 1973), is that of Judge Waterman in *Hendry v. United States,* 418 F.2d 774, 782–784 (2d Cir. 1969). In *Hendry, supra,* at page 783, the court states ". . . Dalehite seems to subject to suit those decisions which apply an existing rule to the facts of a case."

Accordingly, where a statute [21 U.S.C. § 352(f)] defines the term "misbranded," and another section [21 U.S.C. § 381(a)] provides for the detention of articles apparently misbranded, little, if any, discretion is used to detain the articles. The officer is merely following the mandate of the statutes. On the other hand suppose a section merely provides for the detention of articles which are "misbranded" without a companion section which defines "misbranded". In such a situation without the aid of a statute defining "misbranded", the officer would use his discretion to classify an article as misbranded and detain it. In this latter situation, according to *Hendry, supra,* the discretionary function exception of the second phrase of § 2680(a) would apply. However, this case falls within the former situation, where the compliance officers merely applied the existing rules found in 21 U.S.C. § 352(f) and § 381(a) in detaining the homeopathic remedies. Thus, the discretionary function exception does not apply.

Notwithstanding the inapplicability of the discretionary function exception, it is clear that this Court must dismiss the tort claims of plaintiff for lack of jurisdiction for the following reasons:

1) Plaintiff improperly instituted this action prior to filing his administrative claim with the FDA.

2) Assuming plaintiff had properly filed his administrative claim with the FDA before filing this suit, the tort claim would be exempted from the FTCA: a) under § 2680(c) in that it arises out of the detention of goods by customs officers; b) under the first phrase of § 2680(a), as this action arises from the act of an employee of the government exercising due care in the execution of the Federal Food, Drug, and Cosmetic Act.

## CONCLUSIONS OF LAW

There being no genuine issue of material fact, the defendants are entitled to summary judgment as a matter of law. The defendants' motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied. This memorandum constitutes this Court's findings of fact and conclusions of law.